IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

JULIE ANNE WAIT, )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 18-0201-MU
)
ANDREW M. SAUL, )
Commissioner of Social Security,[1] )
)
    Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Julie Anne Wait brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), based on disability. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 17 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See* Doc. 19. Upon consideration of the administrative record, Wait's brief, and the Commissioner's brief,[2] it is

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.
[2] The parties elected to waive oral argument. *See* Docs. 18, 20.

determined that the Commissioner's decision denying benefits should be reversed and remanded under sentence four of § 405(g).[3]

## I. PROCEDURAL HISTORY

On or about September 4, 2013, Wait applied for DIB, under Title II of the Social Security Act, and for SSI, based on disability, under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383d, alleging disability beginning on January 30, 2007. (Tr. 394-407). Her applications were denied at the initial level of administrative review on October 4, 2013. (Tr. 243-47, 249-52). On October 18, 2013, Wait requested a hearing by an Administrative Law Judge (ALJ). (Tr. 309-10). After a hearing was held on December 3, 2014 (Tr. 159-80), the ALJ issued an unfavorable decision finding that Wait was not under a disability from the alleged onset date of her disability through the date of the decision, February 27, 2015. (Tr. 214-28). Wait appealed the ALJ's decision to the Appeals Council, which granted the request for review, vacated the decision, and remanded her case to the ALJ for further proceedings on June 7, 2016. (Tr. 234-37). The ALJ conducted a second hearing on December 8, 2016. (Tr. 137-58). The ALJ again issued an unfavorable decision finding that Wait was not under a disability from the alleged onset date of her disability through the date of the decision, July 3, 2017. (Tr. 48-69). Wait appealed the ALJ's decision to the Appeals Council, which denied her request for review on April 2, 2018. (Tr. 1-4).

---

[3] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 17. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

2

After exhausting her administrative remedies, Wait sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on August 17, 2018. (Docs. 8, 9). Both parties filed briefs setting forth their respective positions. (Docs. 12, 15). The case is now ripe for decision.

## II. CLAIMS ON APPEAL

Wait alleges that the ALJ's decision to deny her benefits is in error for the following reasons:

1. The ALJ erred in rejecting the opinion of treating physician Dr. Bruce Bode who opined that, due to her diabetes mellitus, she was not able to perform even sedentary work on an ongoing basis;

2. The ALJ erred in weighing the opinions of the treating psychiatrists David W. Hodo, M.D., David Hall, D.O., Barry Scanlon, M.D. and Atlanta Psychiatry Associates; and

3. The ALJ's erred by conducting a flawed credibility examination by relying on the check-boxes rather than the narrative description of her functioning and testimony at two hearings.

(Doc. 12 at pp. 1-2).

## III. BACKGROUND FACTS

Wait was born on January 19, 1967 and was 46 years old at the time she filed her claim for benefits. (Tr. 394, 401). Wait initially alleged disability due to Type 1 Diabetes, anxiety, depression, spotting in eyes, teeth problems, and memory loss. (Tr. 469). Wait completed college, earning a BA in fine arts and a

3

BA in journalism. (Tr. 142). She has worked in the past as a reporter/journalist and storyteller/children's librarian, but she has not worked since her alleged onset date. (*Id.*). She indicated that she generally engages in normal daily activities; such as, personal care, caring for her two elementary age sons, driving her sons to and from school, light housework, laundry, mowing, shopping, paying bills, reading, and painting, but she alleges there are periods when she is not able to perform these activities. (Tr. 141, 479, 481-83). She reported having infrequent social interactions due to feeling panicked and claustrophobic and having trouble with her memory, completing tasks, concentration, and understanding. (Tr. 483-84). Wait alleged that she is unable to work due to problems associated with her diabetes and because of chronic anxiety and depression. (Tr. 144-47).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ made a determination that Wait had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 51-69). The ALJ findings set forth in her July 3, 2017 decision that are relevant to the claims on appeal are set forth below.

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment

4

must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As set forth above, Wait has asserted three grounds in support of her argument that the Commissioner's decision to deny her benefits is in error. However, based on the finding, as set forth below, that the ALJ's error in assigning weight to the medical opinions of the treating psychiatrists requires remand to the Commissioner, the Court pretermits its discussion of the remaining issues. *See Jenkins v. Colvin*, CA 2:12-00465-N, 2013 WL 3465190, at *2 (S.D. Ala. July 10, 2013).

Wait asserts that the ALJ erred in assigning weight to the medical opinions of her treating psychiatrists, David W. Hodo, M.D., David Hall, D.O., Barry Scanlon, M.D. and Atlanta Psychiatry Associates. The relevant social security regulations[4] provide that "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a

---

[4] Because Wait filed her claim for social security benefits prior to March 27, 2017, the applicable rules for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. *See* 20 C.F.R. §§ 404.614, 404.1527.

6

claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). With regard to treating sources, the applicable regulation provides that if the ALJ finds "that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). When the ALJ does not give the treating source's opinion controlling weight, the ALJ must apply the following factors in determining the weight to give the opinion: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the supportability of the opinion with relevant evidence and by explanations from the source; 4) the consistency of the opinion with the record as a whole; 5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and 6) any other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization").

The Eleventh Circuit has also addressed this issue, holding that "[t]he ALJ must give a treating physician's opinion 'substantial or considerable weight unless good cause is shown to the contrary.'" *Schink v. Commissioner of Social Security*, __ F.3d __, 2019 WL 4023639, at *7 (11th Cir. Aug. 27, 2019) (quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004)). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records." *Id.* The Eleventh Circuit has also consistently held that the failure of the ALJ to "clearly articulate" the reasons for giving less weight to the opinion of a treating physician is reversible error. *See id.; Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

In the instant case, the ALJ reviewed much of the medical evidence, as well as Wait's testimony, portions of the Function Report she completed, and portions of the Function Report completed by her sister, in the decision denying benefits. After having done so, the ALJ accorded "very little weight" to the opinion of Dr. Hodo, accorded great probative value to the treatment records of Behavioral Medicine and Dr. Hall, and gave no mention of or weight to the records or opinions of Dr. Scanlon or to the records or opinions of Montgomery Psychiatry & Associates. All of these doctors were treating physicians. The ALJ also accorded little weight to the opinion of Dr. Stutts, a consultative psychological examiner who performed an evaluation of Waits at the request of the Social Security Administration on August 16, 2011, in which he opined that "the claimant's ability to understand and to carry out and remember instructions is

moderately to severely impaired" and "the claimant's ability to respond appropriately to supervision, co-workers and the public is moderately to severely impaired." (Tr. 65). However, the ALJ accorded "substantial, but not great weight" to the assessment of State Agency psychological consultant Dr. Koulianos that Wait was not disabled and gave partial weight to the assessment of State Agency psychological consultant Dr. Jackson that Wait has only mild to moderate limitations. (Tr. 66-67).

With regard to her assessment of Wait's treating psychological practitioners, the ALJ found:

> In terms of the claimant's anxiety and depression, the undersigned notes that the initial reports from Dr. Hall at Behavioral Medicine in 2012 detailed the claimant presenting with complaints of *"a return of symptoms associated with a long standing mood disorder"* (Ex. 10F, 8). At that time, Dr. Hall noted the claimant appeared anxious and hypervigilant, and that she spoke in a somewhat rapid and disjointed manner. Other symptomology included irritability, sleep disturbance, loss of motivation, anxiety, as well as suicidal ideation (Ex. 10F, 9-10). The treatment plan was determined to be psychotherapy and use of Celexa (*Id.*). By mid-2013, the claimant continued to present with worsening depressive and anxiety symptoms (Exhibit 10F, 2). Thus, treatment commenced through the remainder of 2013, with little noted improvement (Ex. 15F, 8).
>
> However, the undersigned notes that by March of 2014, progress notes from Behavioral Medicine chronicled improvement in the claimant's condition (Ex. 15F, 2) Specifically, Dr. Crook indicated the following:
>
> *"Improvement is noted; patient states she is feeling much better and anxiety and depression are better; compliance with medication is good ... there have been no outbursts or expressions of anger; impulsive behaviors are not reported....*

9

*Mood presents as normal with no signs of either depression or mood elevation; affect is appropriate, full range, and congruent with mood; associations are intact and logical. … There are no signs of anxiety; there are no signs of hyperactive or attentional difficulties" (Id).*

In spite of the aforementioned presentation, the diagnostic impression of the claimant's clinicians in 2014 continued to be that of moderate major depressive disorder and anxiety disorder. At that time medications were inclusive of Xanax, Celexa, Trazodone, Ativan and Wellbutrin (*Id*). However, by the end of 2014, ongoing improvement continued to be chronicled. Specifically, treatment notes dated November 17, 2014 indicated the following:

*"… [patient] denies any psychiatric problems or symptoms; her behavior has been appropriate and uneventful; no side effects are described or evident; she specifically denies psychotic depressive or anxiety symptoms; mood is euthymic with no signs of depression or elevation; her speech reveals no abnormalities of rate, volume or articulation, and her language skills are intact; she convincingly denies suicidal ideas or intentions; there are no signs of psychotic process; her behavior is generally appropriate and there are no indications that hallucinations or delusions are present; there are no signs of thought disorder; associations are intact; thinking is generally logical and thought content is appropriate; cognitive functioning based on vocabulary and fund of knowledge is commensurate with her age and abilities; orientation, memory and general cognitive abilities present as normal and intact; no signs of anxiety are present; there are no signs or hyperactivity or attentional difficulties; insight and judgment are basically intact and normal"* (Exhibit 19F).

Treatment records from Dr. Hodo dated April 28, 2014; show that the claimant reported that Alprazolam helped her to focus (Exhibit 17F).

In further consideration of the seemingly positive progress note summarized above which was dated November 17, 2014, the undersigned notes that Dr. Hodo completed a Medical Source Statement dated seven days earlier (i.e., November 10, 2014), in

which he opines, in pertinent part, the following (Exhibit 18F):

*"marked limitation in the ability to understand simple instructions; extreme limitation in ability to understand detailed or complex instructions; marked limitation in ability to carry out simple instructions; extreme limitation in ability to carry out detailed or complex instructions; marked limitation in ability to remember simple instructions; extreme limitation in ability to remember detailed or complex instructions; extreme limitation in ability to respond appropriately to supervision, co-workers and members of the general public/customers; extreme limitation in ability to respond to customary work pressures; extreme limitation in ability to deal with changes in a routine work setting; marked limitation in ability to use judgment in simple one or two step work-related decisions; extreme limitation in ability to use judgment in detailed or complex work-related decisions; extreme limitation in ability to maintain attention, concentration or pace for periods of at least two hours; marked limitation in activities of daily living; marked limitation in estimated degree of deterioration in personal habits; and extreme limitation in estimated degree of constriction of interests"*

In light of the fact that the conclusions of Dr. Hodo detailed above appear to greatly contradict the observations of her clinicians seven days later (Ex. 19F), this opinion is assigned very little weight. Moreover, the undersigned notes that Dr. Hodo provided no rationale for such severe limitations, and his findings were merely conclusory. Likewise, very little weight is assigned to the Medical Source Statement completed by Dr. Hodo more recently in December of 2016. Specifically, in Dr. Hodo's most recent Medical Source Statement he opines, in pertinent part, the following conclusions (Exhibit 32F):

*"moderate limitation in the ability to understand simple instructions; extreme limitation in ability to understand detailed or complex instructions; marked limitation in ability to carry out simple instructions; extreme limitation in ability to carry out detailed or complex instructions; moderate limitation in ability to remember simple instructions; extreme limitation in ability to remember detailed or complex instructions; extreme limitation in ability to respond appropriately to supervision and co-workers; marked limitation in ability to respond appropriately to customers or other members of the general public; marked limitation in ability to respond to customary work pressures; marked limitation*

11

*in ability to deal with changes in a routine work setting; marked limitation in ability to use judgment in simple one or two step work-related decisions; extreme limitation in ability to use judgment in detailed or complex work-related decisions; marked limitation in ability to maintain attention, concentration or pace for periods of at least two hours; marked limitation in activities of daily living; marked limitation in estimated degree of deterioration in personal habits; and marked limitation in estimated degree of constriction of interests"*

Overall, Dr. Hodo's opinions are conclusory, lacks adequate explanation, and are generally inconsistent with the medical evidence of record as a whole. For example, in 2014 the claimant's condition was described as no more than moderate (Exh. 15F). In March 2014, her condition was shown as an improvement and her anxiety and depression as better. Her relationships with family and friends and work performance were normal. In addition, only one month prior to his December 2016 Medical Source Statement, mental health treatment records reflect a report of depressed mood and intermittent suicidal ideation, but she had good attention and memory, fair concentration, appropriate mood and affect and logical thought process. There were no delusions or hallucinations. Her condition was described as moderate (Exh. 31F). The only part of Dr. Hodo's opinion at Exhibit 18F that is consistent with the evidence of record, is his opinion indicating that the medication helps her ability to function and she can manage benefits in her own best interest. Thus, due to the inconsistencies, his opinion is given very little weight.

As for the other evidence, I give great probative value to the treatment records from Behavioral Medicine and/or Dr. Hall. Overall, their records show the claimant's conditions to be essentially stable and/or controlled with medication. As such, little weight is given to the 2011 opinion of Dr. Stutts indicating that, "*the claimant's ability to understand and to carry out and remember instructions is moderately to severely impaired;*" and "*the claimant's ability to respond appropriately to supervision, co-workers and the public is moderately to severely impaired*" (Exhibit 6F, 5). Other evidence, including but not limited to the mental health records of Behavioral Medicine, reflect less limitations and are more consistent with the record as whole.

(Tr. 63-65).

In weighing the evidence and making her assessments, the ALJ did not review or consider the records and opinions of two of the psychiatrists who treated Wait or seemingly consider the totality of some of the records she did cite and rely upon. With regard to some of the records cited in support of her assessment according Dr. Hodo's opinion little weight, the ALJ cited to only portions of the statements contained in the record for that date, rather than considering all of the records for that visit and she did not appear to consider the totality of the evidence during the relevant time period. For example, in determining to give little weight to Dr. Hodo's December 2016 Medical Source Statement, the ALJ relied upon the following:

> In March 2014, her condition was shown as an improvement and her anxiety and depression as better. Her relationships with family and friends and work performance were normal. In addition, only one month prior to his December 2016 Medical Source Statement, mental health treatment records reflect a report of depressed mood and intermittent suicidal ideation, but she had good attention and memory, fair concentration, appropriate mood and affect and logical thought process. There were no delusions or hallucinations. Her condition was described as moderate (Exh. 31F).

(Tr. 65). The ALJ's decision reflects that her reason for discounting the 2016 MSS was based on an incomplete analysis of the record evidence. "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing. *Schink*, 2019 WL 4023639, at *10.

First, the ALJ relied upon statements made in isolated records in 2014, two years prior to issuance of the 2016 MSS, to support her finding that Dr. Hodo's

opinion should be accorded little weight. A complete review of the records from the 2014 time period reveals that Wait's psychological condition waxed and waned that year. For example, notes from Behavioral Medicine on December 30, 2013 reflect that she showed "minimal treatment response as of today," she described "severe anxiety to the point of almost being dysfunctional (takes one bath a month)," and she appeared "anxious" with pressured speech, a glum demeanor, tangential thinking,[5] and fidgety. (Tr. 737). When she returned on January 27, 2014, improvement was noted and she reported no depressive or anxiety symptoms. (Tr. 735). However, when she was seen on February 24, 2014, she showed a "partial treatment response," her self-care was reduced, she appeared anxious, her speech "was excessive, almost pressured," her thinking was "tangential," and "restlessness, suggestive of anxiety" was observed. (Tr. 733). Again, on March 24, 2014, improvement was noted, Wait stated her anxiety and depression were better, and there were no signs of anxiety. (Tr. 731). On April 28, 2014, she began treatment with Dr. Hodo reportedly because Dr. Crook, who she had been seeing at Behavioral Medicine, moved. (Tr. 761- 64). His initial diagnosis was major depression. When he saw her on May 19, 2014, she

---

[5] In medical terms, tangential speech is speech in which "expressions or responses [are] characterized by a tendency to digress from an original topic of conversation, in which a common word connects two unrelated thoughts. … Tangentiality can destroy or seriously hamper the ability of people to communicate effectively. It is frequently seen in schizophrenia." Mosby's Medical Dictionary (9th ed. 2009). Tangentiality is "[a] disturbance in the associative thought process in which one tends to digress readily from one topic under discussion to other topics that arise in the course of associations; observed in bipolar disorder and schizophrenia and certain types of organic brain disorders." Farlex Partner Medical Dictionary (2012).

reported she had recently been suicidal. (Tr. 758). On June 9, 2014, she reported to Dr. Hodo that she was withdrawing, didn't want to be involved, was stressed, and had suicidal thoughts. (Tr. 757). On June 16, 2014, she reported that she was feeling some better. (Tr. 756). On September 8, 2014, she reported that she would like to sleep better and that she was experiencing some anxiety and depression. (Tr. 751). She again reported suicidal thoughts on September 5, 2014. (Tr. 749). In her visit on October 20, 2014, she was angry, hostile, and suicidal. (Tr. 746). She again began treatment at Behavioral Medicine with Dr. Hall on November 17, 2014, at which time she denied any depressive or anxiety symptoms. (Tr. 768). However, on February 19, 2015, she began treatment with Dr. Scanlon after a referral from Dr. Bode because she was "still suicidal." (Tr. 771). On that date, she reported that she just wanted to shut everything down and stay in bed. (Tr. 772). The evidence from this time period, when considered *in toto*, discounts the ALJ's use of the March 2014 record as support for according Dr. Hodo's 2016 MSS little weight.

The ALJ also supported her opinion that Dr. Hodo's opinion should be given little weight by referring to a portion of a medical record dated November 9, 2016 that stated that Wait had a "depressed mood and intermittent suicidal ideation, but she had good attention and memory, fair concentration, appropriate mood and affect and logical thought process. There were no delusions or hallucinations. Her condition was described as moderate." (Tr. 65). This same record, however, also reveals that Wait reported that she had "been taking more of the Xanax along with the XR due to increased anxiety." (Tr. 866). This record

15

showed that the quality of her condition had worsened, the severity was moderate, and the duration was chronic. The report also stated that she had poor energy, poor appetite, fair motivation, variable concentration and attention, severe panic attacks, moderate mood swings, moderate irritability, was easily distracted, and was fearful. (Tr. 866-67). Lexapro, an anti-depressant, was added as an additional medication and her Xanax dosage was increased. (Tr. 868).

Finally, the ALJ did not cite or seemingly consider the records from two of Wait's treating physicians – Dr. Scanlon and Dr. Freeman (Montgomery Psychiatry & Associates) – who treated Wait during 2015 and 2016 – when weighing Dr. Hodo's opinion or in determining her RFC. "[A]lthough there is no rigid requirement that the ALJ specifically refer to every piece of evidence, the ALJ's failure to meaningfully address the evidence of record constitutes such a broad rejection that judicial review is frustrated." *Patey v. Saul*, Case No. 3:18-cv-649-J-JRK, 2019 WL 4316741, at *8 (M.D. Fla. Sept. 12, 2019) (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005)). A review of the records from those two treating psychiatrists shows the following: Wait began treatment with Dr. Scanlon on February 19, 2015. It appears that she was referred for psychiatric help at that time by Dr. Bode because she was "still suicidal." (Tr. 771). At that visit, she noted that she wanted to shut everything down and stay in bed. (Tr. 772). She expressed that she was not sure if this was caused by her medication and said that she did not want to be crazy but did want to be productive. (*Id.*). On March 19, 2015, she reported that her suicidal thoughts were more aggressive and that she had been taking her kids to school and then going back to bed until it was time to go back to school. (Tr. 788). Dr. Scanlon discontinued her Celexa and started her

on other medications, including Seroquel. (*Id.*). She seemed some better on April 15, but called Dr. Scanlon's office on May 13, 2015, after feeling suicidal for four days. (Tr. 787). She called again on June 3, 2015, and reported she was bed bound, had no desire to do anything, and felt like an old person who only has a short time to live. (Tr. 785). On June 30, 2015, she reported she was taking four Valium per day, and on July 16, she reported that she was extremely suicidal and felt very overwhelmed. (Tr. 784). She had an urgent appointment on July 29, 2015, at which she reported that she was having not "quasi," but "troubling" suicidal ideation and had moved the guns to the neighbor's house. She also reported that she was taking valium regularly. (Tr. 783). Dr. Scanlon increased her Wellbutrin and changed Valium to Xanax. (*Id.*).

On April 7, 2016, Wait was seen by Park T. Chittom, M.D., for diabetes. He noted she was unsteady and that the longer she talked the more inappropriate her conversation became. She told him that she had been suicidal for a long time and claimed she had never seen a psychiatrist. His records reflect that she exhibited flight of ideas and left the office against medical advice but assured him that she probably was not going to kill herself any time soon. (Tr. 789-793).

On April 26, 2016, she began treatment with Dr. Freeman and his associates at Montgomery Psychiatry Associates. She reported passive suicidal thoughts, poor energy, poor appetite, poor motivation and interest, panic attacks, mood swings and crying spells. She characterized her concentration and attention as "skipping right now." (Tr. 854-856). On June 9, 2016, she reported variable energy, fair motivation and interest, moderate panic attacks, mood swings, crying spells, irritability and fair concentration. (Tr. 851-853). On August 1, 2016, she was fragile and felt at wit's end.

17

She reported decreased energy, poor motivation and interest, mood swings, crying spells, irritability, worry and fair attention and concentration. (Tr. 547-580). On September 30, 2016, her panic attacks had become severe and she was easily distracted. (Tr. 844-846). On November 9, 2016, she was taking increased Xanax due to increased anxiety. She admitted intermittent suicidal ideation without a specific plan. Her doctor increased Xanax and added Lexapro and Trazodone. (Tr. 866-868). On December 29, 2016, she reported increased episodes of fear and terror, increased anxiety, poor appetite, poor sleep, fair motivation and interest, variable concentration and attention, mood swings and distractibility. (Tr. 130-132). On March 31, 2017, she reported increased anxiety. She reported, "I have been clawing my skin and I have several places on my back." She also described an episode in which, "she felt like she wanted to dig a hole under her house and bury herself." (Tr. 124).

Consideration of these records and the totality of all records from the psychiatrists who treated or examined Wait simply do not support the ALJ's conclusion that Dr. Hodo's opinions are "generally inconsistent with the medical evidence of record as a whole," especially taking into account the fact that the ALJ does not appear to have given consideration to the records of Dr. Scanlon or Montgomery Psychiatry. The other two reasons given by the ALJ for giving Dr. Hodo's opinions little weight were that the opinions were conclusory and lacked adequate explanation. However, the fact that Dr. Hodo used a "check box" format without space for explanation of the assessments "is not a basis, in and of itself, to discount them as conclusory." *Schink*, 2019 WL 4023639, at *10. "[T]reating-physician opinions 'should not be considered in a vacuum, and instead, the

doctors' earlier reports should be considered as the bases for their statements.'" *Id.* (quoting *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984)(per curiam)). "In other words, the ALJ should have interpreted [Dr. Hodo's] answers to the questionnaires in light of [his] treatment notes." *Id.* Here, the ALJ did not cite to any of Dr. Hodo's treatment notes that were significantly inconsistent with his opinions.

This Court, mindful of the limits of its review, declines to make a determination as to the effect the medical records of Dr. Scanlon and of Montgomery Psychiatric Associates, taken into consideration with the totality of the other psychiatric records presented and the totality of Wait's testimony and Function Report, have on the weight to be given to Dr. Hodo's opinion when such a determination is within the purview of the ALJ. Accordingly, for the reasons set forth herein, the Court finds that this case should be remanded so that the Commissioner can specifically consider the entirety of the psychiatric evidence.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff Julie Ann Wait's claim for benefits be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's

jurisdiction over this matter.

**DONE** and **ORDERED** this the **18th** day of **September, 2019**.

                              s/P. BRADLEY MURRAY
                              **UNITED STATES MAGISTRATE JUDGE**